**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**MICHAEL RAY LINDSEY**                                                         **PLAINTIFF**

**VS.**                                  **CIVIL ACTION NO. 2:08CV233-WAP-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                               **DEFENDANT**

**REPORT AND RECOMMENDATION**

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of the claimant, Michael Ray Lindsey, for disability benefits. The parties have not consented to have a magistrate judge conduct all the proceedings in this case; therefore, the undersigned submits this report and recommendation to the United States District Judge.

**I. PROCEDURAL AND FACTUAL HISTORY**

The claimant filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., on September 15, 2005.[1] The application was denied both initially and upon reconsideration, and the claimant requested and was granted a hearing before an administrative law judge ("ALJ"). In a hearing decision dated March 4, 2008, the ALJ found the claimant was not disabled. The ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied the claimant's request for review on October 3, 2008. The ALJ's March 2008 decision is now ripe for review under section 205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

---

[1] In his brief the claimant states that he also filed an application for supplemental security income on September 15, 2008. However, the court could find no record of an SSI application in the transcript. Nor did the ALJ mention such an application in his decision.

The claimant was born in 1956, and he was 49 years old at the end of the relevant period in this case. He had a seventh grade education and past work as a house framer/carpenter and diesel mechanic. The claimant initially alleged he became disabled on December 31, 2002, but at the hearing, he amended his alleged onset date as August 1, 2005. He alleged he was disabled due to back problems and a heart condition.

The ALJ determined that the claimant had severe impairments, including chronic obstructive pulmonary disease("COPD") and bradycardia. [2] However, after considering the criteria for Listing 3.02, regarding the claimant's COPD and Listing 4.05, regarding his bradycardia, the ALJ found the claimant did not have an impairment or combination of impairments that met or medically equaled any listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.[3] Next, after consideration of the entire record, with respect to the claimant's residual functional capacity ("RFC"), the ALJ determined that:

> through the date last insured, the claimant had the . . . [RFC] . . . to perform light work as defined in 20 CFR 404.1567(b) except he can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk a total of 6 hours and for 20 minutes at a time; and sit a total of 6 hours. He can occasionally climb, balance, stoop, crouch, and kneel, but never crawl. He can push/pull 20 pounds occasionally. He must avoid exposure to temperature extremes, humidity, chemical, dust ad fumes.

---

[2] Bradycardia is a condition involving "slowness of the heartbeat, as evidenced by slowing of the pulse rate to less than 60." *Dorland's Illustrated Medical Dictionary* 237 (29th ed. 2000).

[3] The ALJ specifically found the claimant did not meet the criteria for Listing 3.02 because his "FEV1 and FVC values were well above listing level." Further, the claimant's bradycardia did not meet the criteria for Listing 4.05 because there was "no evidence of uncontrolled, recurrent episodes of cardiac syncope or near syncope despite prescribed treatment." "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

Furthermore, relying upon the testimony of a vocational expert ("VE"), the ALJ determined that the claimant could not perform his past relevant work but, considering his age, education, work experience, and RFC, he could perform other jobs in the local and national economies, including a sticker and hand packager.

## II. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[4] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[5] First, the claimant must prove he is not currently engaged in substantial gainful activity.[6] Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[7] At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[8] Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and/or mental

---

[4]*See* 20 C.F.R. §§ 404.1520 (2008).

[5]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[6]20 C.F.R. §§ 404.1520(b) (2008).

[7]20 C.F.R. §§ 404.1520(c) (2008).

[8]20 C.F.R. §§ 404.1520(d) (2008). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2008).

demands of his past relevant work.[9] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[10] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.[11]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not

---

[9] 20 C.F.R. §§ 404.1520(e) (2008).

[10] 20 C.F.R §§ 404.1520(f)(1) (2008).

[11] *Muse*, 925 F.2d at 789.

reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. ANALYSIS

The claimant presents three issues for this appeal: 1) the ALJ ignored the allegation of the claimant's attorney that the date last insured was an error, 2) the ALJ mischaracterized or contradicted the claimant's allegations regarding ability to do daily activities, and 3) the ALJ failed to grant the claimant's request for a supplemental hearing. The court will consider each issue in turn.

#### A. Claimant's Date Last Insured

In his brief, the claimant charges that "[t]he ALJ ignored the allegation from Claimant's attorney that the last date insured was an error . . . ." The claimant also contends the ALJ "further prejudiced" him concerning his alleged date last insured because the ALJ ultimately denied a request for a supplemental hearing on the ground that a 2008 report of a consultative examination was irrelevant because it was performed after the claimant's insured status had expired. The court will address this argument more fully in section C below. Lastly, the claimant argues that even if he had not been insured for disability insurance benefits, the ALJ "could have determined a date of disability based on the consultative exam" for purposes of determining his eligibility for supplemental security income ("SSI").

5

First, the court finds the claimant's contention that the ALJ erred in determining his last date insured ("DLI") is unfounded. During a colloquy between the claimant's attorney and the ALJ at the hearing, the claimant's attorney stated that it was his "understanding" that the claimant had worked consistently through part of 2005 and that the claimant and his wife had filed a joint tax return "up through '05" and, thus, the claimant should have been insured through 2009 or 2010. Additionally, the claimant testified that in 2005 he worked on trucks and framing houses and made on average from $4000 to $5000 per month from the two jobs. The claimant testified that he stopped working in August 2005. The ALJ determined that based upon the claimant's earnings record which, contrary to his testimony, showed that he last worked in 2002, his DLI was December 31, 2005. Presumably, the claimant alleges he earned wages and/or self-employment income after 2002 and, thus, had additional quarters of coverage which would have yielded a DLI much later than the ALJ's calculation.[12]

Insured status is the earnings requirement a claimant must meet in order to establish entitlement to any type of benefit or a period of disability based on his/her earnings record. *See generally* 42 U.S.C. §§ 414, 423(a), (c); 20 C.F.R. §§ 404.101 *et seq*.; Program Operations Manual System (POMS) RS 00301.101, "Insured Status - Overview" (available at https://secure.ssa.gov/apps10/poms.nsf/517e83681a5eb8b28525688d0058721c/b078df33c911ec3 08525754c000640af!OpenDocument). To have disability insured status, a claimant must have

---

[12]A Social Security claimant must show that he became disabled on or before the date his insured status expired, or DLI, in order to be eligible for benefits. *See Barraza v. Barnhart*, 61 Fed.Appx. 917, 2003 WL 1098841, at *1 (5th Cir. 2003) (*citing Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) ). "Evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the Commissioner's Title II disability analysis." *See id.* (*citing Torres v. Halala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995) ).

earned either $50 in wages or $100 in self-employment income for at least 20 quarters in the 40-quarter period immediately prior to the date of disability.[13] *See Chapman v. Apfel*, 236 F.3d 480, 482 (9th Cir. 2000) (citing 20 C.F.R. § 404.130(b)(2)); *see also* 42 U.S.C. § 416(i)(2)(C), (i)(3)(B)(i); 20 C.F.R. §§ 404.110, 404.130, 404.143. DLI is the last day in the last quarter when disability insured status is met." Program Operations Manual System (POMS) RS 00301.148, "Date Last Insured (DLI)" (available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0300301148!opendocument).

The Commissioner tracks the social security earnings record of a wage-earner by taxes paid by the employer, but an individual who is self-employed must file a personal income tax return Form 1040 with a Schedule SE (self-employment) and a Schedule C (business profits and loss statement), and pay his own social security taxes. *See Chapman, supra*, at 482. The Social Security Act provides that the Commissioner's records "shall be evidence for the purpose of proceedings before the Commissioner . . . or any court of the amounts of wages paid to, and self-employment income derived by, an individual and of the periods in which such wages were paid and such income was derived." 42 U.S.C § 405(c)(3). The Act further provides:

> The absence of an entry in such records as to wages alleged to have been paid to, or as to self-employment income alleged to have been derived by, an individual in any period shall be evidence that no such alleged wages were paid to, or that no such alleged income was derived by, such individual during such period.

*Id*. However, the Act allows the record to be amended if any error is brought to the

---

[13]There are other ways to qualify, but none is pertinent to this appeal. To be fully insured requires at least six, but no more than 40 quarters of coverage over the claimant's entire work history, depending on the claimant's age. *See* 20 C.F.R. §§ 404.101; 404.110.
    Moreover, to be insured at a given time, an individual the claimant's age must have 20 quarters of coverage in the last 40-quarter period which ends with the quarter in which the disability is alleged to have begun. *See* 42 U.S.C. § 423(c)(1)(B)(I); 20 C.F.R. § 404.130(b).

Commissioner's attention within three years, three months and fifteen days of the year in question.  42 U.S.C. § 405(c)(1)(B); 20 C.F.R. § 404.802.  After this period has expired, the Commissioner's records of wages paid to or self-employment income derived by an individual during any such year "shall be conclusive" and may only be corrected under certain specified conditions.[14]

---

[14] 42 U.S.C. § 405(c)(4) states in pertinent part:

(4) Prior to the expiration of the time limitation following any year the Commissioner of Social Security may, if it is brought to the Commissioner's attention that any entry of wages or self-employment income in the Commissioner's records for such year is erroneous or that any item of wages or self-employment income for such year has been omitted from such records, correct such entry or include such omitted item in the Commissioner's records, as the case may be. After the expiration of the time limitation following any year--

**(A)** the Commissioner's records (with changes, if any, made pursuant to paragraph (5) of this subsection) of the amounts of wages paid to, and self-employment income derived by, an individual during any period in such year shall be conclusive for the purposes of this subchapter;

**(B)** the absence of an entry in the Commissioner's records as to the wages alleged to have been paid by an employer to an individual during any period in such year shall be presumptive evidence for the purposes of this subchapter that no such alleged wages were paid to such individual in such period; and

**(C)** the absence of an entry in the Commissioner's records as to the self-employment income alleged to have been derived by an individual in such year shall be conclusive for the purposes of this subchapter that no such alleged self-employment income was derived by such individual in such year unless it is shown that he filed a tax return of his self-employment income for such year before the expiration of the time limitation following such year, in which case the Commissioner of Social Security shall include in the Commissioner's records the self-employment income of such individual for such year.

42 U.S.C.A. § 405(c)(4).

In this case, the claimant's earnings record shows he last had "covered earnings" in 2002 in the amount of $33,847.40.[15] Beyond his own testimony, the claimant failed to produce any evidence to substantiate his allegation that he earned wages or self-employment income after 2002. Accordingly, the ALJ was obliged to conclude that the claimant's earnings record showed he had "sufficient quarters of coverage to remain insured [only] through December 31, 2005." Furthermore, the claimant has failed to rebut the Commissioner's contention that the time limitation for amending his earnings record has now expired and that he has made no attempt to secure an amendment pursuant to the procedure mandated in the regulations. Accordingly, the court finds the ALJ's DLI determination is supported by substantial evidence.

Lastly, the claimant's contention that the ALJ could have considered the 2008 consultative report for purposes of determining his entitlement to SSI benefits is without merit, as the court has found no record of an application for SSI. In his answer to the complaint, the Commissioner denied the claimant's allegation that his claim included a claim for SSI. Furthermore, the ALJ's decision and the Order of the Appeals Council only make reference to a claim for a period of disability and disability insurance benefits. Accordingly, the court completely rejects the first issue submitted by the claimant.

### B. Ability To Do Daily Activities

The claimant next charges that the ALJ erred when he "mischaracterized" or

---

[15] The claimant initially reported to a disability examiner that he became unable to work on December 31, 2002 because of his back and heart condition and that he did not work at any time after the date of his illness. The claimant further reported that his last job was from 1999 to 2002 when he worked as a mechanic for a trucking company for eight hours a day, five days a week. On other forms the claimant also reported that he was self-employed as a carpenter (framing houses).

"contradicted" the claimant's allegations about his ability to do daily activities. The claimant charges that the "ALJ could not seem to make up his mind what the claimant said that he could do." The claimant argues that "the ALJ had a duty to fully develop the record and should have determined what in actuality the claimant said and on what date before he could determine whether or not he believed the claimant to be credible." However, the claimant fails to acknowledge that in his decision, the ALJ actually recited and compared the claimant's allegations reported on disability forms to his later contradictory testimony during the hearing. The court has reviewed the record and finds that, indeed, it was the claimant who could not decide what he could or could not do, and ALJ neither mischaracerized nor "contradicted" any of the claimant's allegations.[16]

And, to the extent the claimant argues that the ALJ failed to fully develop the record, the argument fails. An ALJ has a basic obligation to develop a full and fair record. *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). However, that obligation rises to a "special duty" only when the claimant is not represented by counsel.[17] *Id. See also Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir.1994). In this case, the ALJ specifically questioned the claimant extensively about his symptoms and his ability to perform daily activities from year to year beginning in 2005 through the date of the hearing. Indeed, the ALJ specifically raised the issue of the claimant's 2005 report of daily activities to state agency workers and asked the claimant if his condition had gotten

---

[16]Indeed, disability report forms indicate that the claimant reported that on a daily basis from the time he woke up until he went to bed, he walked around the yard, fed pets and walked to the mailbox. Further, he reported no limitations with regard to his ability to take care of his personal needs. Yet, during the hearing, he testified he could not walk to the mailbox without giving out and that he needed help to dress and groom himself.

[17]"This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane*, supra, at 1219-20 (citations omitted).

worse. The claimant essentially replied that he no longer did certain activities for reasons not related to his alleged symptoms and limitations. Moreover, the claimant was represented by counsel at the hearing, and counsel had adequate opportunity to allow the claimant to clarify or explain any inconsistencies in his former reports and his testimony. Yet, during his examination of the claimant, counsel focused almost exclusively on what the claimant could currently do. Accordingly, the court finds the ALJ adequately carried out his duty to develop the record regarding the claimant's ability to perform daily activities.

Lastly, to the extent the claimant contends the ALJ improperly evaluated his credibility, this contention also fails. The ALJ is in the best position to evaluate the claimant's credibility. *Wren v. Sullivan*, 925 F.2d 123 (5th Cir. 1991). Accordingly, the court will not upset the ALJ's credibility findings if there is substantial evidence to support those findings. *See Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). In this case, the ALJ's credibility determination is supported by substantial evidence. The ALJ found that the claimant's credibility was "questionable." Among other things, the ALJ pointed out that the claimant had given inconsistent reports regarding his alcohol use and ability to perform daily activities, that he had received no treatment or undergone any testing for his back complaints, and that his allegation of hearing loss was inconsistent with the objective medical evidence. It was proper for the ALJ to consider this evidence in making a credibility determination. *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999).

## C. Supplemental Hearing

Lastly, the claimant charges that the ALJ failed to grant a supplemental hearing at his attorney's written request. On February 7, 2008, the claimant's attorney wrote a letter to the ALJ

stating that if the ALJ could not "submit a fully favorable decision," he wanted to request a supplemental hearing in order to "produce additional witnesses and evidence." Additionally, counsel wrote, "If such a hearing is necessary I may wish to subpoena Dr. Jim Adams so I could question him by telephone." Dr. Adams had conducted a post-hearing comprehensive medical examination of the claimant on January 15, 2008, upon authorization by the ALJ. Along with the claimant's report of his medical history and subjective complaints, Dr. Adams essentially reported that the chest pain the claimant complained of was not anginal; he had only mild to moderate hearing loss; a sinus bradycardia was noted; and vision in the claimant's left eye was partially corrected with glasses. In his decision, the ALJ indicated that the claimant had objected to Dr. Adams' report of the consultative examination. Ultimately, the ALJ denied the claimant's request for a supplemental hearing because he decided not to consider Dr. Adams' findings on the ground that they were irrelevant because the examination had been performed after the claimant's insured status had expired.

First, as stated above, evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the Commissioner's disability determination. *See Barraza v. Barnhart*, 61 Fed.Appx. 917, 2003 WL 1098841, at *1 (5th Cir. 2003) (citing *Torres v. Halala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995) ). Therefore, to the extent the claimant argues the ALJ erroneously failed to consider Dr. Adams' report, his claim is without merit. Indeed, the claimant's contention in grounded entirely upon his claim that his DLI extended beyond December 2005, a claim the court has already rejected.

Next, the claimant essentially argues that the ALJ committed reversible error when he denied his request for a supplemental hearing. In support of this claim, the claimant cites the

*Hearings, Appeals and Litigation Law Manual* ("HALLEX") § I-2-5-44 for the proposition that an ALJ must grant a supplemental hearing at the claimant's request "unless the ALJ receives additional documentary evidence that supports a fully favorable decision." Additionally, the claimant cites *Lidy v. Sullivan*, 911 F.2d 1075 (5th Cir. 1990) in support of his contention that his right to due process was violated because he had an "absolute right" to subpoena Dr. Adams in order to cross-examine him with regard to the post-hearing report.

With regard to HALLEX, § I-2-7-30 provides in pertinent part: "If a claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision." However, in *Newton v. Apfel*, the Fifth Circuit recognized that HALLEX "does not carry the authority of law." *Newton*, 209 F.3d 448, 459 (5th Cir. 2000). The court concluded, nevertheless, that "[i]f prejudice results from a violation [of HALLEX], the result cannot stand." *Id*. In this case, the claimant has failed to either show or allege any prejudice resulting from the ALJ's failure to grant a supplemental hearing. The claimant has failed to proffer any evidence whatsoever that could and would have been adduced during a supplemental hearing that would have led to a different result in this case. *See Newton, supra*, at 459-60 (finding the claimant was not prejudiced by the violation of HALLEX provision requiring Appeals Council to consider new evidence where new evidence consisted of opinions not relevant to the claimed period of disability). Accordingly, the court finds the ALJ's failure to grant a supplemental hearing did not amount to reversible error.

Lastly, the claimant's claim that he had an absolute right to cross-examine Dr. Adams and was denied due process also fails. Dr. Adams' examination of the claimant was performed after the claimant's DLI, and the ALJ noted that the claimant's motion for a supplemental hearing was

denied because it was "irrelevant with the consultative examination thrown out." Accordingly, because the claimant has failed to point to any evidence that Dr. Adams' findings were relevant to the disability determination in this case, no due process violation occurred. *See James v. Barnhart*, 177 Fed. Appx. 875, 877 (11th Cir. 2006) (holding because the ALJ did not substantially rely on doctor's post-hearing report to deny claimant benefits, no due process violation occurred in the ALJ's denial of supplemental hearing request).

## IV. RECOMMENDATION

Based on the foregoing findings and conclusions, it is recommended that the Commissioner's decision be affirmed.

The parties are referred to 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

Respectfully submitted this 5th day of October, 2009.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE